MEACH vs. STONE and PERRY, Administrators of PERRY.

To a bill in Chancery, brought for a specific performance of a contract for the sale of lands, the defendant may avail himself of the statute of frauds, either by plea or demurrer, unless in certain excepted cases, appearing on the face of the bill.

Such case is not taken out of the statute by part performance, unless such performance be made under such circumstances, as to amount to a fraud, against which, a Court Equity will relieve, nor even then, unless such part performance be expressly stated in the bill.

Chittenden,
January.
1814.

THIS was a suit in Chancery. The bill stated in substance, that on the first day of April 1810, the Selectmen and Trustees of schools of the town of Charlotte, by indenture of that date, demised to Nehemiah Lowrey and his assigns, a lot of land in the town of Charlotte, containing ninety acres, for the term of nine hundred and ninety nine years, under a rent of $16,05 cents to be paid annually, (setting out the indenture at length ) By virtue of which demise, the said Nehemiah Lowrey, entered and was possessed of said lot. That afterwards, and before the first day of October, 1807, (the time not being specified,) the said Nehemiah Lowrey, assigned to Israel B. Perry, of Charlotte, the said indenture of lease for the remainder of the term. By virtue of which said lease, Israel B. Perry entered, and was possessed of said premises, for the residue of said term. That being so possessed, the said Israel B. Perry, on the first day of October, 1807, applied to the plaintiff for the loan of a large sum of money ; and proposed to secure the payment thereof to the plaintiff, by an assignment of said lease ; (so it is expressed in the bill,) that, on this inducement, the plaintiff did loan to the said Perry, the sum of $670,50 cents, for which he took the said Perry's promissory note of that date, to be paid at the end of three years, with interest. And at the same time the said Perry promised the plaintiff, to secure the payment of the sum

of money, contained in said note with interest, to assign to the plaintiff all his right and interest in said lease, by virtue of his assignment from Nehemiah Lowrey, on the plaintiff's promising, to deliver up said lease and assignment to the said Perry, on the payment of the said note of hand. And on failure of payment at the day, to wit, the first day of October, 1810, the said Perry, to deliver to the plaintiff the quiet and peaceable possession of the premises, contained in said lease. That on the first day of October, 1810, the said Perry, having never paid the money contained in said note, or any part thereof, but having wholly neglected and refused, although often requested; the plaintiff, then and there, to wit, at Charlotte aforesaid, demanded of said Perry to complete said assignment, and to deliver posseession of the premises to the plaintiff; or to pay the said sum of money contained in said promissory note. That in the month of February, 1811, the said Perry died intestate; and the defendants were duly appointed administrators on his estate; that they had represented said estate insolvent. That since the death of the said Perry, and since the defendants were appointed administrators, as aforesaid, the plaintiff had, at divers times, demanded of them to complete said assignment, and deliver possession of the premises to the plaintiff; or to pay the principal and interest due on said note. And that they had neglected and refused. And pray that the defendants as administrators of said Perry, may be decreed to pay to the plaintiff the principal and interest due, and to grow due, on the said note, by a certain day to be limited by the Court, or, in default thereof, to complete said assignment, and deliver possession of the premises to the plaintiff; and, that all the heirs and creditors of said estate be foreclosed.

The defendant pleaded in bar, the statute regulating conveyances, and for the prevention of frauds therein; that there was no agreement in writing, &c. And answered that the estate of said Perry was insolvent, and that they are ready to pay to the plaintiff his dividend on said note, whenever the same shall be declared. But the defendants made no answer relative to said agreement.

*Harrington*, and *Van Ness* for the plaintiff, took exceptions to the plea, and contended that the plea ought not to be allowed. That the same practice and principles will preval here in questions arising under the clause of the statute which the defendants have pleaded, which have been adopted under a similar clause of the

*Chittenden, January. 1814.*

*Meach & Stone vs. Perry.*

*Chittenden*,
January.
1814.

Meach &
Stone
*vs.*
Perry.

British statute of frauds and perjuries. The rule there is, that, if a defendant in his answer, confess the agreement, though not in writing, the Court hold the agreement, as taken out of the statute, by the confession of the defendant, and decree a performance. If a defendant, in his answer, deny the agreement, the plaintiff cannot prove it by parol. But the plaintiff has a right to an answer from the defendant, in relation to the agreement ; he must either confess or deny it. It is a necessary consequence of an established rule, that whatever in conscience affords a title to the plaintiff, the defendant cannot be exempted from disclosing. It is a right of which the plaintiff cannot be deprived by plea. But, on another ground, the plea ought not to be allowed : this is a case of part performance, and cases of part performance, have never been considered as within the statute.

*Robinson* for the defendant.—The statute may be pleaded in bar both of the discovery and the relief ; if so, it is unnecessary to answer to the agreement. There are exceptions, indeed to this rule, in cases where part performance is clearly alledged, or fraud charged in the bill ; but in this bill there is nothing charged which amounts to fraud or to a part performance. Many cases were cited by the counsel, which as far as they were thought to have any bearing on the points decided, are examined in the opinion of the Court, delivered by

CHIPMAN, Ch. J. The bill in this case is very diffuse, and is very inartificially drawn. The practice, which has too much prevailed, has been pursued in this case—the practice of setting out long instruments in writing, *in hace verda,* instead of pleading the legal effect of such instruments, which is the only correct mode of pleading. Thus a few lines may supply the place of whole pages, and be much more clear and intelligible ; it is something worse than a useless incumbrance on the record.

The object of the bill is to obtain a specific performance of an agreement, stated to have been made between the plaintiff and Perry the intestate, for the assignment of a lease of a farm in Charlotte, for a long term of years, by Perry to the plaintiff—or rather to obtain a decree, for an assignment of the lease, a delivery of the possession of the premises, and a foreclosure ; as it is stated, that the assignment was to have been made by way of Mortgage, to secure

the payment of a sum of money, by Perry to the plaintiff, by a certain day which has long since past.

*Chittenden, January. 1814.*

*Meach & Stone. vs. Perry.*

The defendants have pleaded the statute regulating conveyances of real estate, and for the prevention of frauds therein, in bar; averring that there was no agreement in writing, signed by the parties or either of them. And have answered to the insolvency of the estate of Perry only, setting forth briefly the proceedings in the settlement of said estate, and offering to pay the plaintiff his dividend when it shall be made out by the judge of probate. Exceptions are taken to this plea which rest on two grounds. First, it is contended to be an established principle, that such parol agreement, if confessed, by the defendant, is not within the equity of the statute, and the Court will give relief on such agreement, so confessed; if the agreement be denied, the case is within the statute—and the Court will not grant relief. That the defendant is compelled to answer and either deny or confess the agreement.

Secondly, it is contended that this, as appears on the face of the bill, is a case of part performance, or a case of a performance on the part of the plaintiff, which has always been considered, as a case excepted out of the statute.

It is true, as stated by the plaintiff's council, that our statute pleaded by the defendant in this case, is the same as the British statute, on the same subject; and the cases, arising under it, will embrace the same principles of decision. It is, therefore, proper and necessary to examine the English authorities on the points to be decided.

Very soon after the passing of the British statute, specific relief, on a parol agreement for the sale of lands, was decreed on the confession of the defendant in his answer; and it was said, that, as the statute was made for the prevention of frauds and perjuries, it did not extend to a case where the defendant confessed the agreement in his answer. That there was in such case no danger of perjury, so not within the statute. This was adopted as a rule in Chancery. And, as observed by Lord Thurlow, in the case Whitechurch v. Bevis, Bro. C. C. 558, "the rule seems to carry a necessary conclusion, that whatever, in conscience affords a title to the plaintiff, it is impossible to exempt the defendant from disclosing." Now to carry the rule to this extent, is to annihilate the principle on which the statute was founded. For, while, by excluding parol proof of

24

*Chittenden,*
January.
1814.

Meach &
Stone
*vs.*
Perry.

the agreement, the danger of perjury, as far as relates to witnesses, is removed, the temptation is accumulated on the party. The defendant is to be compelled to answer under the strongest bias of direct interest; since, by denying, or essentially varying the agreement, he may acquit himself of the demand; for no parol proof can be admitted to contradict him. It was impossible to support the rule to that extent. The principle has since undergone repeated discussion, and has been limited, and finally settled by a course of decisions in the highest tribunals in that country.

It has been decided, that the defendant, pleading the statute, is not compellable to answer respecting the agreement, unless it be a case of part performance, appearing on the face of the bill. The principal cases are. Whaley *v.* Bagnal, 6 Bro. P. C. 45. Whitechurch *v.* Bevis, 2 Bro. C. C. 558. Jordan and others *v.* Sawkins, 3 Bro. C. C. 388. And Redding *v.* Wilkes, 3 Bro. C. C. 400.

The case of Whitechurch *v.* Bevis was decided upon great consideration, and a full investigation of precedents and principles. It was a bill for the specifick performance of a parol agreement for the purchase of a house. A part performance was alledged, in this, that the attorney employed, had received instructions both from the plaintiff and the defendant, to prepare the conveyances, and had made a minute of the terms on which the sale was to proceed. The minute was, " Mr. Bevis agrees to convey the house (describing it) in consideration of forty pounds per annum. Mr. Whitechurch to take the stock at a fair appraisement." That the parties agreed to deliver the title deeds to Chub, the Attorney, to prepare the conveyances, and then deliver them to one Maynard, as a trustee for the purpose of securing the annuity, (the rent of forty pounds). The bill stated further, as a part performance, that the parties had fixed on a person to value the stock; and that the plaintiff had, with the privity and consent of the defendant, entered into articles with a third person, one Webb, to grant him a lease of the premises, as soon as he should be in possession.

To this bill the defendant pleaded the statute of frauds, both to the discovery and to the relief, but did not aver in his plea, that there was no parol agreement; and his answer only went to the part performance, and did not deny the parol agreement.

Exceptions were taken to the plea, and there were three solemn arguments before it was finally decided. The first exception to the

plea was, that it was a case of part performance, so stated in the *Chittenden,* bill, and, therefore, according to the uniform course of decision, excepted out of the statute. But, the Chancellor decided that none of the facts stated in the bill amounted to a part performance, there was, therefore, nothing in this exception.

*January.*
*1814.*

Meach &
Stone
*vs.*
Perry.

The second exception was, that if the defendant had confessed the agreement, it would take the case out of the statute; and the plaintiff would be entitled to a decree; he must therefore answer to the agreement, and either confess, or deny it.

After two arguments, the Chancellor was not fully satisfied, he, therefore, overruled the plea, and ordered it to stand for an answer, with liberty to except; and reserved the benefit of the plea to the hearing. It appears that the defendant had, by a further answer confessed the agreement. The plea was again argued on the exception.

The Chancellor, Lord Thurlow, observing on the rule respecting the defendant's being compelled to answer, to wit, whatever, in conscience affords a title to the plaintiff, it is impossible to exempt the defendant from answering, goes on to say. " The cases have been uniform in this point only : Where the defendant has pleaded the statute of frauds, and has not confessed a *written* agreement, the Court has in no instance, decreed an execution, of the agreement. The case of Whaley *v.* Bagnal, was so determined upon great argument, in the year 1768, and has fixed the rule upon a basis of authority, a great deal too strong, to be overturned, or answered. I have therefore, with great deliberation, turned over the cases, cited; and all I can find are two cases in which relief has actually been obtained, contrary to the statute of frauds. The first case was decided before Lord Mansfield in the year 1723, Child *v.* Godolphin, where it was held the plea should stand for an answer. The other, Cottingham *v.* Fletcher, where the defendant, in his answer, admitted a trust, and it was decreed, that the trust should be executed, notwithstanding the statute. The *dicta* are as frequent as the cases; and therefore, it appeared to me necessary to examine that branch of the practice, which relates to the confession of an agreement, not in writing, notwithstanding a plea of the statute. I should think it a matter, not so much to be supported by a plea, as to be demurred too. Because the statute says, that an agreement, not in writing, shall not avail." After some further observation on

*Chittenden.*
January.
1814.

*Meach &*
*Stone*
*vs.*
*Perry.*

the propriety of a demurrer in such case, he proceeds.  " In the present decision, I go no further, than the cases before mentioned, analogous to the case in Ireland, (Whaley *v.* Bagnal) but a great deal stronger upon the point upon which my opinion rests.   That case applies to a great variety of transactions, and admits that the agreement was not reduced to writing, but insists on a part performance.   The bill was filed, and merely a plea of the statute put in, no answer.; only an averment, that no writing was signed by either of the parties.   The counsel on both sides agreed in the Law, according to the reason given on both parts of the case; for, in that case, the single question was, whether the plea sufficiently covered the facts stated in the bill.   But it was said, that those facts amounted to a part performance.   And the House of Lords were of opinion, that, upon the face of the bill, it was no part performance.''  Accordingly in the principal case, Lord Thurlow overruled the exception, the plea was allowed, and the bill dismissed, although the defendant had, in his further answer, confessed the agreement.

The case of Jordan and others *v.* Sawhins, so far as relates to the present question, was a bill for a specific performance of a parol agreement, for a lease of a public house, stating certain facts as a part performance.   The statute of frauds was pleaded, without any answer to the parol agreement.   Lord Chancellor Thurlow held the facts stated as a part performance, not to be such, and allowed the plea.

The next case was that of Redding *v.* Wilkes, in the same year.  This was a parol agreement within the statute of frauds.   Certain facts stated were relied on as a part performance.   The defendant demurred alone, probably relying on what was thrown out in the case of Whitechurch *v.* Bevis.   It was held, by the Chancellor, that the facts stated in the bill and relied upon as a part performance, did not amount to part performance.   And he allowed the demurrer.

It is then established, notwithstanding a contrary opinion may still be maintained, by the collectors and epitomizers of cases decided in the early times of the British statute, and even by some text writers of eminence, that the defendant, in such cases, may avail himself of the statute, either by plea or demurrer; unless in certain excepted cases, appearing on the face of the bill.   I say certain excepted cases, because I think it probable that the case of part performance may be found not to be the only exception.

Where redress is given in the cases of part performance, the true <span>Chittenden, January. 1814.</span> ground, on which it is given, is that of fraud. Not that kind of fraud, which consists merely in the non performance of a promise; but something more. For instance, the vendor of an estate in land, <span>Meach & Stone vs. Perry.</span> by parol agreement, which, simply as such, he would not, taking advantage of the statute, be compelled to perform, suffers the vendee, in confidence of the agreement, to go into possession, and lay out his money in repairs and improvements on the purchased premises, and then refuses to fulfil the agreement : it is, and in great justice, considered to be a fraud : a fraud, of that kind, which gives a court of equity jurisdiction of the whole case, with all its circumstances. It is examined as a fraud, and the agreement is produced, not merely as an agreement, but as the instrument and mean of the fraud. And a specific performance of the agreement is decreed, as the only way, in which the person so defrauded, can have full and adequate redress. Therefore although, the case of part performance, has been treated as an exception out of the statute, yet it more properly belongs to the class of frauds, than agreements. It is a fraud practised under pretext of an agreement. But, in cases of part performance of parol agreements, to whatever class they may belong, a plea of the statute is not to be allowed. The part performance must however, to oust the defendant of his plea, appear distinctly on the face of the bill.

In all the cases which I have been able to find, the facts insisted on as a part performance, have been expressly so alledged : so were all the cases which have been cited. And also the case of Whitbread v. Wainwright, 1 Bro. C. C. 404, in which the plea of the statute was overruled, because it was multifarious. It is not, however, at present decided, to be absolutely necessary that part performance be expressly alledged in the bill ; it may be enough, that sufficient facts are stated. But, at any rate, it must appear on the face of the bill to be such a case.

There is in this bill no express allegation of any facts as a part performance. Are there any facts sufficient to support such allegations ? The statement is briefly, that on the 1st. day of October 1807, Perry, the intestate applied to the plaintiff for a loan of money, and proposed, as a security, to make an assignment of a lease, as already stated. That, induced by, and relying on this proposition (promise it is called in the bill) the plaintiff advanced him by way

Meach &
Stone
*vs.*
Perry.

of loan 970,56 cents, for which he took Perry's promissory note, payable at the end of three years with interest, that is on the 1st day of October, 1810; and Perry faithfully promised the plaintiff to assign to him that lease, by writing under his hand on the back of the same, as security for the punctual payment of the principal and interest, of the note, on the first day of October, 1810, on the plaintiff's promising, that, on punctual payment, the lease and assignment should be delivered up to Perry. And if the money should not be paid by the day, the plaintiff was to go into quiet and peacable possession of the premises contained in the lease.

To understand the matter fully, it may be necessary briefly to analyse the transaction. Perry made a proposition to the plaintiff, that if he would loan to him a certain sum of money, he Perry would assign to the plaintiff a certain lease by way of security. It is stated as a promise, but it is, in its nature, merely a proposition. Something held out, as an inducement to an agreement. And we see, that the final agreement was variant from, and extended beyond the terms of the proposition. The plaintiff advanced on loan to Perry $970,50 cents upon Perry's promissory note payable at a future day. Then follows the agreement or promise, on the part of the defendant, to assign the lease, under the stipulations before stated. The consideration for the promise was the loan so advanced by the plaintiff. Now to consider it as an agreement for the sale of the interest in the term, the whole purchase money was paid by the plaintiff, the vendee. How far has such payment been considered as part performance ? In Lacon *v.* Martin, 3 Atk. 2. The purchaser having on a parol agreement, advanced several sums, for part of which he took a bond, in the mean time, Lord Hardwick, upon all the circumstances decreed a performance.

In Pengal *v.* Rose, on a parol agreement for a lease for twenty one years on a fine of £150, the purchaser paid £100, and the vendor gave directions for making a lease ; it was held not to be such a part performance on one part, as to authorise the Court to decree a specific execution. There are several cases to be found on the same subject, equally at variance.

In this case, as in all the cases of part performance, a ground of fraud ought to be laid to entitle the plaintiff to relief. Had this principle been first adopted, and steadily adhered to, instead of placing it on part performance, depending on acts which frequently are, and

must be equivocal, affording proof of fraud or not, according to the
attending circumstances, I am of the opinion, we should not have found so many apparent inconsistencies in the decisions of these cases. The question never ought to have been, is it a case of part
performance ? But does the part performance, with the attending circumstances, make a case of fraud, against which a court of equity ought to relieve ? On this principle, I have considered the present case, and, taking the whole statement into consideration, I am not able to make it a case of fraud.

But let it now be considered what it really is, an agreement for a mortgage of real estate—a collateral security for money lent. The advance of the money by the plaintiff to Perry the intestate, on his promissory note, was the consideration. Here is certainly a good, valuable and legal consideration for the agreement. No agreements made without consideration, could ever have been enforced, either at law or in equity. Such agreement, needed not the passage of the statute; it was not intended to apply to them, but to certain agreements, which were good and valid, before the act. To all parol agreements, for the sale of lands, tenements or hereditaments, or any interest therein or concerning them, upon whatever good valuable and legal consideration they might be made. To give it a different construction would be, in effect, to repeal the law. But, it may be said, that this is a case of a contract executed. That indeed, will liken it to a case where the purchase money has been paid. It certainly goes no farther ; and it admits, to me, the conclusive answer : no fraud is suggested in the bill, other than the general allegation, which is well answered by a negative as general. Nor do the facts stated in the bill amount to a fraud.

No time was appointed for the execution of the assignment, but the legal construction of the contract is, that it was to be done within a reasonable time, on request of the plaintiff.

It is very evident from a perusal of the bill, that it was the intention of the parties, that, on failure of payment, possession should be delivered to the plaintiff, and the property become vested in him, absolutely, and irredeemably. A failure was intended to operate not merely as a forfeiture at law, as in case of a mortgage, but of all right and equity of redemption. Now had this agreement been reduced to writing, and a bill had been brought to compel an assignment, the court would not have decreed it agreeably to that inten-

*Chitteden,*
January.
1814,

Meach &
Stone
*vs.*
Perry.

tion.  Forfeitures are odious, particularly in a court of equity.  An assignment might have been decreed but with a defeasance, to operate as a common mortgage.  This would have reserved to the assignor a valuable interest, the equity of redemption, of which he could not be deprived, but by a regular foreclosure.  Not, that, had the agreement been carried into effect agreeably to this intention between the parties, it could have been set aside.  It is one of those hard cases, not amounting to fraud, in which a court of equity would not interfere, neither, in the first instance, to carry it into effect, nor in the second, to set it aside.

It does not appear that the plaintiff, made any demand of Perry, the intestate, to make the assignment until the first day of October, 1810, the day on which the note became payable.  It is stated that " on that day, Perry, having hitherto *neglected, to pay the money* due on said note, though often requested, *then wholly refused to make said assignment,* and your orator then and there, to wit, at Charlotte, aforesaid demanded of the said Perry to complete said assignment, and to give possession to your orator, or to pay the said sum of money contained in said note."  These are the words of the bill.  The demand of the possession here, coupled with a demand of the assignment to be made, was clearly premature.  Perry had the whole of that day to pay the money.  But it serves to shew the plaintiffs's understanding of the agreement—that the property was irredeemable.  There was no offer of any condition of redemption, or to take the property in satisfaction of the money due on the note.  In this connection, the plaintiff had not a right to that which he demanded.  I am still speaking as though it had been an agreement in writing.  And, taking the demand of an assignment as standing by itself, the plaintiff was not in equity entitled to it, without the offer of a clause of redemption to be inserted.  And Perry might refuse to do that which equity would not compel him to do.

But it is not alledged that Perry refused to comply with the demand : it is no where averred that *he did* not make the assignment, or pay the money on the note, either then, or at some future day, during his life.  It is stated that there was a neglect and refusal before, and up to the time of the demand ; but there can be no transposition in this case—much less can such averment be dispensed with.

These observations are intended to apply only to the point under consideration—the question, whether there appears in the case, as

stated, any fraud, which can entitle the plaintiff to proceed on parol proof of the agreement, as a case of part performance, as it is called—a case excepted out of the statute. Nothing of the kind can be discovered.

*Chittenden,*
*January.*
*1814.*

*Meach &*
*Stone*
*vs.*
*Perry.*

I will observe one thing further, (it has not had as it ought not to have, any influence on any part of the opinion in the case) that this is not wholly a case of parol agreement. The promissory note was a part of the agreement, and was in writing, signed by one of the parties, Perry. So that on the appearance of the note, the plaintiff could not, agreeably to the rules of evidence, which are as strict in this point, in a court of Chancery, as a court of law, be permitted to go into parol proof of any further agreement. On the whole, the plea both upon authority and principle must be allowed.